IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

CHERYL GRAY,

        Plaintiff,

        v.                              Civ. No. 17-1779-LPS

KIRKWOOD DENTAL ASSOCIATES, P.A.,

        Defendant.

---

Michelle D. Allen, Caitlyn E. Quinn, ALLEN & ASSOCIATES, Wilmington, Delaware,

    Attorneys for Plaintiff.

Kristen S. Swift, Robert D. Cecil, Jr, TYBOUT, REDFEARN & PELL, Wilmington, Delaware,

    Attorneys for Defendant.

**MEMORANDUM OPINION**

September 18, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendant Kirkwood Dental Associates, P.A.'s ("Kirkwood") Motion for Summary Judgment (D.I. 33). For the reasons discussed below, the motion will be denied in part and granted in part.

**BACKGROUND**

Kirkwood is a Delaware-based dental practice with offices in Glasgow and Wilmington. (D.I. 43 Ex. 1 at 9) The practice is an equal partnership divided between four partner dentists. (D.I. 43 Ex. 5 at 8-15) When asked about hiring and firing decisions, Kirkwood partner Robert Christy testified that the "partners have final say over everything, I suppose." (D.I. 33 Ex. H at 6)

Plaintiff Cheryl Gray ("Gray") began working at Kirkwood on July 6, 1993 as a dental assistant. (D.I. 33 Ex. B at 11) Around six to eight years later, she became a front desk receptionist. (D.I. 43 Ex. 3 at 13) She was terminated in September 2015. (D.I. 43 Ex. 3 at 15)

Throughout her time at Kirkwood, Gray received mostly positive evaluations. For instance, in her 2012 evaluation – the most recent evaluation in the record – Dusty Meadows, Kirkwood's former office manager and human resources representative, described Gray as "dependable" and a "team player." (D.I. 43 Ex. 4. at 72) That evaluation also listed several "areas for improvement," including "work[ing] on the schedule at both offices" and "keeping day bags up to date." (*Id.*) Likewise, a 2006 evaluation by Meadows stated that Gray "helped me through some tuff employee problems" but added that Gray "[n]eed[s] to not say negative info about employee to other employees." (D.I. 43 Ex. 4. at 74-75)

There is no evidence that Gray was formally reprimanded or disciplined. Meadows testified that Gray was never disciplined for "her behavior or conduct towards any other staff

1

member or doctor." (D.I. 43 Ex. 6 at 71) Meadows also testified that she did not receive any complaints about Gray's performance from the practice's doctors and that Gray had no "verbal or written disciplinary action in her file." (D.I. 43 Ex. 6 at 82) Likewise, Kirkwood partner Arthur Young testified that he was unaware of any complaints against Gray. (Ex. 11 at 7-8)

Gray testified that on two occasions a Kirkwood partner, Dr. Christy, made comments linking her age to possible termination. On one of these occasions, she contends that Dr. Christy told her "they could bring someone in younger and pay them a lot less money." (D.I. 33 Ex. B at 46-47) While she was unclear about the specific timing of the two age-related statements, Gray testified that "[t]he last time was approximately six months before I was let go [in September 2015] and the other was previous to that." (D.I. 33 Ex. B at 47)

Dusty Meadows testified that sometime before August 2014, Gray had reported to her that Christy had told Gray, "I could hire two people half your age and half your salary to do the same job you do." (D.I. 43 Ex. 6 at 56) Meadows added that when she informed the doctors about this incident at one of their meetings, they "didn't say anything back to me, nothing." (D.I. 43 Ex. 6 at 58) Kirkwood office manager Monica Durante testified that she heard Dr. Christy make this statement. However, Durante said it was made in "2006, maybe 2007" and thought Christy "never directed it to either one of us or to anyone in the office for that matter." (D.I. 33 Ex. G at 29-30) In his deposition, Dr. Christy denied ever making these statements. (D.I. 33 Ex. H at 32)

On another occasion, Dr. Christy said he "had lots of pink slips on his desk just waiting to go out." (D.I. 33 Ex. B at 59) Gray interpreted this to mean "that people were going to get let go." (D.I. 33 Ex. B at 59) Christy did not deny making this comment. (D.I. 33 Ex. H at 35) He

2

testified, however, that he was being sarcastic and objected to any "intimation that I was in any way negative or serious about the layoffs." (D.I. 33 Ex. H at 35)

On September 15, 2015, Kirkwood fired Gray. (D.I. 33 Ex. B at 15) Gray was 58 years old. (D.I. 34 at 14) Dr. Esbitt was the one who informed Gray that she was being terminated, although he testified that "[i]t was a group decision" and that "[e]veryone" (that is, all the partners) "agreed to it." (D.I. 43 Ex. 1 at 24, 54, 57) The record contains evidence from which a reasonable factfinder could conclude that it was principally Esbitt and Christy who made the termination decision. (D.I. 33 Ex. F at 5; D.I. 33 Ex. H at 40) (Christy: "I agreed with [Dr. Esbitt] to terminate [Gray]") Kirkwood partner Dr. Nicholas Punturieri said he "liked working with Cheryl" and "had no problems with Cheryl." (D.I. 43 Ex. 13 at 12) After Kirkwood fired her, Dr. Punturieri wrote a recommendation for Gray. (D.I. 43 Ex. 13 at 14)

As justification for its decision to terminate Gray, Kirkwood points to purported interpersonal conflicts Gray had with her co-workers. On November 23, 2008, "Sheila" – who appears to be someone who worked with Gray at Kirkwood – emailed Kirkwood partner Eric Esbitt to say she had "struggl[ed] with deep depression . . . from Cheryl [Gray] and Dusty [Meadows]'s abuse over the past 7 years." (D.I. 33 Ex. C at 161) "Sheila" alleged that Gray and Meadows "connive to watch each others backs, and the employees that defend themselves or stand up to the[m], end up being punished or fired." (*Id.*) She urged Esbitt to "[m]ake Cheryl accountable for her work, and stop allowing [her] to prance around the office, completing nothing but ordering lunch and Longerburger, and make that girl work!" (*Id.*)

Six years later, in a letter dated November 5, 2014, Kirkwood manager Patricia Boon recalled an incident in which Gray "totally humiliated" her by talking to her over the phone "in a

3

loud tone of voice."[1] (D.I. 33 Ex. C at 158) She noted: "[t]his is not the first time this has happen[ed]," adding that the "first time" was when Gray "was calling an old boyfriend and talking for an hour, on our time, our phone lines." (*Id.*) One month later, an outside consultant told Dr. Christy that "Patty" – apparently another Kirkwood employee – described "a very ugly screaming match" that had occurred between her and Gray. (D.I. 43 Ex. 7 at 452)

On August 3, 2015, Dr. Esbitt emailed Dr. Christy and others to complain that Gray's "negativity is again bringing down the office." (D.I. 33 Ex. D at 417) Dr. Esbitt noted that he had met with Gray "months ago," and that Gray had "reassured me that her negative behavior would improve," but also that he was "getting the same consistent complaints from almost every staff member," including that Gray was "constantly making personal phone calls." (*Id.*) He concluded by pledging to "meet with Cheryl without staff . . . no more chances," and predicted that "if [Gray] is gone, morale will improve drastically." (*Id.*)

At his deposition, Dr. Esbitt testified that he spoke to Gray several times about her personal phone calls and her "negativity." (D.I. 33 Ex. A at 33-36) However, he also acknowledged that that there were no "write-ups" in Gray's files of her conflicts with her coworkers.[2] (D.I. 43 Ex. 1 at 36)

After terminating Gray, Kirkwood initially used "younger employees" to handle what had been her responsibilities. (D.I. 34 at 13) Dr. Esbitt testified that 25-year-old Erin Crowe "replaced Cheryl." (D.I. 43 Ex. 1 at 71, 49; Ex. 15 at 154) Then, on January 4, 2016 – nearly

---

[1] Kirkwood asserts that this letter was "placed in [Gray's] file" by Boon, but there is no evidence in the record to support this assertion. (D.I. 44 at 4)

[2] Dr. Esbitt explained this by blaming Dusty Meadows, stating: "[w]hen you [i.e., Gray] are best friends with the office manager, things just are not done the way they should have been." (D.I. 43 Ex. 1 at 37)

4

four months after Gray's termination – Kirkwood hired someone it now characterizes as Gray's "direct replacement," Colleen Piller, who was 54 years old at the time. (D.I. 33 Ex. F at 5; D.I. 34 at 14)

Gray filed this lawsuit on December 8, 2017. (D.I. 1)[3] In her complaint, she alleges that her termination violated her rights under (1) the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* and (2) the Delaware Discrimination in Employment Act (DDEA), 19 Del. C. § 710, *et seq.* She further alleges that Kirkwood breached the implied covenant of good faith and fair dealing.

## LEGAL STANDARDS

A grant of summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the Court can determine that "there is no genuine issue as to any material fact" and that the

---

[3] Gray received her Notice of Right to Sue Kirkwood from the United States Equal Employment Opportunity Commission ("EEOC") on September 15, 2017. (D.I. 43 Ex. 17)

5

movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## DISCUSSION[4]

### I. ADEA

The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish employer liability, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL v. Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

ADEA plaintiffs can prove their case through direct or circumstantial evidence. *See id.* Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference, save . . . the inferences of credibility." *Woodson v. Scott Paper Co.*, 109 F. 3d 913,

---

[4] The Court will not address Kirkwood's arguments about hostile work environment. (*See* D.I. 34 at 8-10) Gray's complaint does not present a hostile work environment claim and Gray expressly represents in her answering brief she is not bringing any such claim. (*See* D.I. 43 at 7)

6

930 (3d Cir. 1997); *see also Pierce v. Donahoe*, 963 F. Supp. 2d 366, 374 (D. Del. 2013) (noting that direct evidence is "information that does not require an inference"). In the ADEA context, direct evidence "must be sufficient on its own to allow a factfinder to determine that age was the but-for cause of the termination decision." *Palmer v. Britton Indus., Inc.*, 662 Fed. App'x 147, 150 (3d Cir. 2016).

When an ADEA plaintiff seeks to use circumstantial evidence, however, her case proceeds according to the *McDonnell Douglas* three-part burden-shifting framework. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). First, the plaintiff must establish a *prima facie* case of discrimination by showing that "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Id.* If the plaintiff makes out such a *prima facie* case, the employer must then "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* Then, the plaintiff must show by a preponderance of the evidence that the employer's stated reason is pretextual. *See id.*

Gray argues that Dr. Christy's statement (possibly made on two occasions) that he could "find someone younger to come in here and do the jobs for half the salary that you girls do it for" is direct evidence of age discrimination. (D.I. 43 at 10) The Court disagrees. Even taken in the light most favorable to Gray, Dr. Christy's statement, made at least five months before Christy participated in the decision to terminate Gray, could not be found by a reasonable factfinder as proving, without any inferences, that Kirkwood fired Gray because of her age. Among the inferences that would need to be drawn are that Christy held the views he expressed five or six

7

months later, that these views were Christy's but-for reason for agreeing to terminate Gray, and that absent Christy's views, Esbitt and the other Kirkwood partners would not have agreed to fire Gray. Because a reasonable juror could only find but-for age discrimination from Christy's statements through this "process of inference," these statements are not direct evidence. *See Woodson*, 109 F. 3d at 930.[5]

Even without direct evidence of age discrimination, however, Gray's ADEA claim survives Kirkwood's summary judgment motion because the record contains sufficient circumstantial evidence from which a reasonable jury could find that she has met every element of such a claim. In terms of her *prima facie* case, it is uncontested that Gray was over 40 years old at the time of her termination, that she suffered an adverse employment decision of termination, and that she was qualified for her position. (D.I. 34 at 14)

The only dispute is whether Kirkwood replaced Gray with a "sufficiently younger" employee. A reasonable factfinder, drawing all reasonable inferences in favor of Gray, could find this element of her claim as well. Kirkwood admits that it initially "rel[ied] upon the current employees, including younger employees to cover [Gray]'s shifts immediately after her

---

[5] The cases that Gray cites for her position that she has produced direct evidence of age discrimination are all distinguishable. In *Seretti v. Morrow Ford Lincoln Mercury, Inc.*, 2012 WL 933058, at *5 (W.D. Pa. Mar. 19, 2012), an employer's statement a plaintiff "was 'old' and that he could no longer do his job because he was old" was direct evidence of age discrimination because "it was uttered in response to Plaintiff's inquiry as to why he was being terminated" and because the employer "made the statement contemporaneously with the challenged employment decision." By contrast, Christy's statements were unprompted and made five to six months before Kirkwood fired Gray. In *Fakete v. Aetna*, 308 F.3d 335, 339 (3d Cir. 2002), an employer's statement was direct evidence because a reasonable jury could find it "was more likely than not a substantial factor in [the employer's] decision to fire [plaintiff]." That holding appears to be questionable now post-*Gross*, in which the Supreme Court held that ADEA claimants must show that age discrimination was the "but-for cause" of her termination. *See Palmer*, 662 Fed. App'x at 150-51. Finally, *Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 363 (D. Del. 2011), addresses circumstantial – not direct – evidence of age discrimination.

termination." (D.I. 34 at 14) There is evidence in the record that the person who most immediately succeeded Gray was in her twenties. (*See* D.I. 43 Ex. 1 at 71, 49; Ex. 15 at 154) While it appears to be undisputed that Kirkwood eventually (about four months after Gray's termination) hired someone (Colleen Piller) only four years younger than Gray, and it is possible a jury will find that Piller "replaced" Gray, and it is also possible a jury will find four years to be an "insignificant age different," as Kirkwood contends (D.I. 34 at 14), a jury would not be unreasonable to find for Gray on these disputed points. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 730 (3d. Cir. 1995) (noting that ADEA claimant may point to immediate temporary replacement, and not just "final replacement," to satisfy this element of claim).[6]

As Gray has made out a *prima facie* case of age discrimination, the burden shifts to Kirkwood to provide a legitimate, nondiscriminatory reason for its termination decision. Kirkwood contends it terminated Gray for her negativity and "interpersonal conflicts" that lowered office morale. (D.I. 34 at 14-15) The record contains testimony and contemporaneous emails describing these alleged problems. (D.I. 34 at 6, 14-15) A reasonable jury could be persuaded by this evidence and Kirkwood's contentions. Therefore, Kirkwood has satisfied its "relatively light burden." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

This conclusion does not entitle Kirkwood to summary judgment, however, because Gray has met her burden to produce evidence from which a reasonable factfinder could find that Kirkwood's proffered nondiscriminatory reason was pretextual. Gray has met this burden both by "(i) discrediting the proffered reasons, either circumstantially or directly, [and] (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a

---

[6] The Court need not address whether the record is also sufficient to allow the reasonable inference that Tara Camoirano, who was 33 years old in September 2015, replaced Gray. (D.I. 43 at 14)

9

motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764; *see also Sempier*, 45 F.3d at 732-33 (holding Court must deny summary judgment where "the record ***could*** support an inference that the employer did not act for non-discriminatory reasons" and that plaintiff need not demonstrate "the evidence ***necessarily*** leads to th[e] conclusion that the employer did act for discriminatory reasons") (internal citations omitted). The evidence from which a reasonable jury could find Gray discredited Kirkwood's reasons and/or that age was more likely than not a motivating or determinative cause of her termination includes: Gray's evaluations were overwhelmingly positive, her most recent evaluation in the record described her as a "team player," Gray never received any formal discipline, partner Dr. Punturieri had "no problems" with her and wrote her a letter of recommendation, and Meadows and Young testified they never received any complaints about Gray.

In sum, this a "paradigmatic case in which each party has produced testimony and evidence that conflicts on the ultimate issue – whether [Gray] was discharged for poor performance or because of [her] age." *Sempier*, 45 F.3d at 732. "The resulting conflict must be resolved by a jury and cannot be resolved on summary judgment." *Id.* at 732-33.

Therefore, the Court will deny summary judgment on Gray's ADEA claim.

## II.  DDEA

Gray "concede[s] the voluntary dismissal of any allegations of discrimination" under the DDEA. (D.I. 43 at 8) Thus, the Court will grant summary judgment on Gray's DDEA claims.

## III.  Breach of Implied Covenant of Good Faith and Fair Dealing

Gray alleges that Kirkwood breached the implied covenant of good faith and fair dealing by (1) firing Gray on the basis of her age and (2) "intentionally creating a false reason to

10

terminate [Gray's] employment." (D.I. 1 at ¶¶ 37-42) The Court agrees with Kirkwood that Gray cannot prevail on this claim.

The DDEA "prevents pursuit of claims alleging a breach of the covenant of good faith and fair dealing based upon employment discrimination, as the DDEA cause of action is the sole Delaware remedy for employment discrimination." *Alred v. Eli Lilly and Co.*, 771 F. Supp. 2d 356, 367 (D. Del. 2011); *see also Wilcoxon v. Red Clay Consol. Sch. Dist.*, 437 F.Supp.2d 235, 247 (D. Del. 2006) ("[P]laintiff cannot assert a common law claim for the breach of the implied covenant of good faith and fair dealing where the [DDEA] provides the exclusive remedy."). Therefore, Delaware law precludes Gray's claim to the extent that it stems from Kirkwood's alleged age-based discrimination.

To the extent Gray is alternatively alleging that Kirkwood should be liable for breach of the implied covenant of fair dealing because it "intentionally creat[ed] a false reason to terminate her employment" (D.I. 1 at ¶ 40), it fails for lack of evidence.[7] As evidence on this point, Gray cites only the Delaware Department of Labor's ("Department") September 28, 2015 unemployment determination for Gray, which states that Kirkwood "reported" that it fired Gray due to her "excessive negativity, excessive personal phone calls and excessive complaints made by employees and patients." (D.I. 43 at 18-19 Ex. 10) Gray contends that submission of such a "statement" to the Department constitutes "falsif[ying] and manipulat[ing] the record." (D.I. 43 at 18) But Gray must provide evidence from which a reasonable juror could find that Kirkwood falsified her ***employment*** records. "[I]f the employer did not actually falsify or manipulate employment records, then it does not matter if the employer gave a false rationale for

---

[7] Under Delaware law, employers who "falsif[y] or manipulate[] employment records to create fictitious grounds for termination" can be liable for breaching the implied covenant of good faith and fair dealing. *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 334 (3d Cir. 2006).

11

termination." *E.E.O.C. v. Avecia, Inc.*, 151 Fed App'x 162, 165 (3d Cir. 2005); *see also Stella v. Dep't of Educ.*, 367 F. Supp. 3d 235, 266 (D. Del. 2019) (noting that under Delaware Supreme Court precedent, "a plaintiff has the burden to prove . . . the falsification of ***her records*** to support an allegation that those records were falsified or manipulated . . . to create a fictitious ground for termination"). Where, as here, the only evidence is of a false or manipulated statement submitted to a governmental agency, and there is "no evidence to show that any false criticisms were placed in her employment file," a reasonable factfinder could not find falsification or manipulation of an employment record. *Parker v. Comcast Corp.*, 2006 WL 694776, at *6 (D. Del. Mar. 17, 2006).[8]

Thus, Gray has not met her burden and the Court will grant summary judgment to Kirkwood on the breach of implied covenant claim.

**CONCLUSION**

For the foregoing reasons, the Court will grant in and part and deny in part Kirkwood's motion for summary judgment. (D.I. 33) An appropriate order follows.

---

[8] Even if Kirkwood had submitted a false statement to the Department, it was at most "memorializing [] its false reasons for termination in writing"—not creating a fictitious record to justify firing Gray. *See Bomberger v. Benchmark Builders, Inc.*, 2017 WL 1377595, at *3 (D. Del. Apr. 13, 2017).

12